Good morning, Your Honors, and may it please the Court, Miles Clark on behalf of Appellant Mott, and I'd like to reserve two minutes of my time for rebuttal. Your Honors, this Court must reverse the trial court's decision on summary judgment and dispositive motions for several reasons. First, the trial court erred in finding that Mott failed to oppose appellees' FDCPA and quiet title claims related to Nevada statutory compliance and granted them as unopposed when Mott actually did respond to the arguments raised. Second, the court erred in finding that all of Mott's claims were premised on the authority to collect or foreclose on his note and deed of trust, when in fact he could have prevailed on his slander of title, Nevada statute, the quiet title claim, and certain FDCPA claims wholly independent of whether defendants had the authority to collect on the loan or whether it was forgiven or whether they could foreclose. Mr. Clark, Mr. Clark, I have a question on the debt forgiveness letter or the alleged debt forgiveness letter. Beyond the letter itself, Mr. Mott submits a declaration, I think, and that's the only thing. And I'm just curious why that is. Did Mr. Mott not have any sort of documentation from the IRS or a reconveyance of the deed from First Franklin? I'm just curious why the record was not more robust with respect to that. Understood, Your Honor. He did not produce that in discovery. I'm not aware that he has that information. My only explanation for that is that this is obviously, this letter was drafted in the late aughts and sent to him. And, you know, it was 2016 before these issues, 2015 and 2016 before these issues came to a head. So that's the... Sure, I understand that still. But if we find that this debt forgiveness letter or purported letter to be unauthenticated, is Mr. Mott's declaration really enough to get this issue before a jury? I'm kind of struggling with that. Well, Your Honor, notwithstanding the debt forgiveness letter, Mr. Mott also, and I don't believe the court accredited it as admissible evidence, Mr. Mott's statement that he had submitted this letter to his employer, the NBA, which has, as he said, a vested interest in making sure that he's financially solvent. They didn't raise any issue with him about this letter. The court characterized that allegation as alleged.  So that's the additional evidence that we have regarding First Franklin. I would also note that First Franklin no longer exists as a company. And so it's not as though we could get a company representative testifying about this letter. But notwithstanding... It didn't have a successor, a successor in interest? Somebody bought it? Somebody has the corporate genealogy? Your Honor, there may have been. I'm not aware of it. Okay. So, but, Your Honor, regardless of whether or not the loan was forgiven or whether or not you find that the court did or did not weigh the evidence on summary judgment, the Well, first of all, because to establish quiet title, as the court found in its 2017 order on plaintiff's motion for partial summary judgment, that the burden is on the move-in to claim that it has titles superior to all others. In its counter, in its verified counterclaim, the Trojan sued everyone except an entity called Stellis. Mr. Madden also effectively testified in that counterclaim that the interest was purchased from Trinity by an entity called, or sorry, by Trinity from an entity called Dream Builder Investments. That turned out to apparently not be true. In fact, the defendants disclosed in their pretrial exhibit list, although they did not disclose during the entire discovery period, in this case, a contract between, purportedly between Stellis and Trinity for the sale of this loan. And that's a problem because Stellis was not only never sued in this case as part of their quiet title action, was not only never identified as a witness, the contract was never produced in connection with discovery, but Madden actually verified in his, in the counterclaim, which defendants tried to use in their 2017 response to our summary judgment, there's evidence that the interest had been purchased by somebody else. Mr. Clark, I'd like to ask you about the licensing requirements issue. Defendants raised the issue of standing in their brief and Mr. Mott's ability to challenge their compliance with Section 645B and 645E. And I'm just not quite sure what standing test would be applied here. Do we look at the Nevada statutes and determine whether Mr. Mott can bring suit or do we apply the traditional standing test? Can you give me your thoughts on that? Well, that issue, admittedly, Your Honor, was not briefed by us because the test that defendants used in their response brief was from, I think, the traditional standing test talking about whether the plaintiff was in the zone of interest that the statute was designed to protect. And here our position would be that Mr. Mott absolutely is. If you look at the statutory text of Nevada NRS 645B and 645E, you'll see that there is the ability of a client to bring a cause of action. And we would argue that, especially given that this standing test is construed favorably in connection with the plaintiffs, that Mr. Mott falls within the zone of interest. In any event, the issue was not raised in the district court, was it? The Trojan attorney raised the issue of standing and to the degree our brief said otherwise, I need to correct that. But I don't recall whether the case they cited on appeal was cited in the district court below, but I do know that we also responded to the standing argument. Did the district court rule on that? No. I do not believe the court reached the issue of standing. Counsel, let me ask you about the, I guess what I thought was the most salient issue is about licensing as a mortgage broker, a mortgage banker, a mortgage servicer. And I understand the argument that even if maybe they're a mortgage servicer, some of the time they might also be a mortgage banker and a mortgage broker and they might not have turned square corners. So for this question, let me give you all of that, that they may have acted as a banker or a broker. Why does that undermine their ability to collect or have collected on a loan? It might be that Nevada should fine them for not being licensed, or it might be that they should bar them from doing certain things. But explain to me how that either affects their title to the loan or independent of anything I read in the statute that we just talked about that says, and if you're not licensed, you have no property rights, you can't collect. Well, Your Honor, I think that the statute is our best evidence of that. And it is plain in saying that without licensure that an entity may not engage in the activities listed, which include the buying and selling of loans. The question is, if it does, does that mean that you have a void, voidable, or not either of those things transaction? I would respectfully submit it would be a void transaction. I know that should be your submission, but is there any authority for that? Other than the statutory text, Your Honor, I've not found a case dealing with this issue. And counsel, my analogy would be, I'm 20 years old. I'm absolutely barred from buying alcohol. It's unlawful. I go in and, in fact, buy the alcohol and take it home. Does that mean I have no property right in the alcohol? The government or any other person can just come and take it? As long as they're not something in the statute that says so. That would seem to be two independent actions. And I don't see why the same thing doesn't apply here. Well, I would say I would analogize that to Your Honor, to the idea in contracts that that a contract requires the traditional principles and also a court willing to accept that. And that is why some contracts. The traditional principle of what? I mean, again, my 20 year old formed a contract, handed over the money, took the alcohol home. He may have committed a crime and there may be some other law that affects it. But just on the face of it, the fact that someone is violating a law while they're doing a transaction doesn't inherently mean that there are no rights at all, are there? Well, I think that there are rights that a court should not enforce. And if you hire an unlicensed contractor, do you not have to pay him? I mean, that may be, but it would have to say that in the statute. Well, it says this statute says that you cannot do these things. You cannot do these things, but does it say that if you do do them, nothing happened? Well, I would surmise that the statute, if the statute has to be enforced, that a court shouldn't find, for purposes of quiet title, that they have an enforceable right to foreclose. Is there any Nevada case law supporting that? I mean, ordinarily, if you have a license rule and somebody doesn't have the license, the enforcement is that the government has some sanction for people who do things without the license. But, and it could be, I mean, there are statutes that say if you do things unlicensed, they're void and no one has to pay you. But usually I would think that that has to be stated someplace. And again, Your Honor, I would rely on the statutory text that says you shall not, you cannot engage in these transactions if you don't have a license. Paraphrasing the statute, but that is. Before your time is up, I'd like to ask you about the FDCPA issues. Because it seems to me that in addition to the two letters, Trojan sent Mr. Mott, which contained the erroneous interest rate. I think it was on February 23rd and March 17th of 2016. Trojan subsequently sent Mr. Mott two more letters, which indicated the correct interest rate. And I think that was on March 24th and July 20th, 2016. So counsel, why are these subsequent letters not enough for us to find that Trojan's error was immaterial under Donahoe? Because Mr. Mott testified in his declaration that he lost time. And under Donahoe, Donahoe relies on the, first of all, it's important to remember that Donahoe deals with simply not a mischaracterization of the raw amounts of interest or principal, because the late payments were also miscalculated. But rather, Donahoe had to deal with how that amount was allocated as between categories of interest. But Donahoe relies on the Hahn case out of the Seventh Circuit. And the Hahn case says that, as we noted in our reply, says that a difference in interest rate absolutely is not, is something that would reasonably confuse a consumer and is concrete and material. And Mr. Mott testified as to why these inaccurate letters caused him damages. The court didn't reach the damages question except, I suppose, in passing by saying that the violations were technical. But there was no challenge to Mr. Mott's contentions that he lost time. So I would submit that we did respond to the arguments raised by the opposition that the violations were absolutely not technical. And I would note that if the court commences in a line drawing exercise as to whether or not a violation was or was not technical dealing with these raw amounts, it will lead to a lot of speculation and a lot of harm. I see my time has expired, Your Honors, unless there are other questions. I have one more question. There is a statute that says IRS 645B.920, contracts for mortgage transaction voidable for certain violations. Is that not applicable here? Let's see. Well, there's 920 and then there's 930. So those would be applicable, yes, Your Honor. Well, then why didn't you say that? I mean, they do directly address the question. One says that any contracts are voidable and the other one says that there's a civil action for it. My apologies, Your Honor. Isn't that the answer to the standing question, too? If it says you can bring a civil action? I believe that is part of the answer, yes, Your Honor. Well, I must be missing something. Okay, thanks. Thank you. Yes, Mr. Brooks. Yes, may it please the Court. Michael Brooks from the law firm of Hutchison Steffen on behalf of Trinity Financial LLC and Trojan Capital Management LLC. So what about my last question? That was going to be the first. If you read a little bit of a deeper dive into that statute, it specifically says by the other party to the contract of the negotiated trade. No, it says the client. The client may bring their civil action. Correct. And in the case of a mortgage banker or mortgage broker, the person in those instances is buying and selling a note that already exists. They're not the transaction that was entered into where the loan was created, but rather the transaction where the note was transferred from one interest holder to another. So in that regard, the statute would not apply to this transaction because Mr. Mott had nothing to do with the buying and selling of the note or in itself. The violations I would point out under the NRS 645 E BND specifically provide for administrative enforcement by a commission appointed by the state of Nevada. There's no civil remedy for a borrower under those circumstances. In those instances, it's the party that was either in the case of a mortgage broker, the party that was represented by the broker for the purposes of buying or selling a note, or in the case of a banker, one that was actually acting on their own behalf or in transferring that note to somebody else. The transactions that might be involved there would be those between Trinity and Trojan and between one of them and the next party up the line. Was that Stellis? Correct. That is correct, Your Honor. And I'd point out that it is significant that the allegations in this case are that my client's conduct in connection with the servicing of the loan, whether it was sending out notices or attempting to enforce the debt. That was in connection with the servicing of this transaction falling squarely in the servicer statute 645 F, which we pointed out we are exempt from because we provided evidence to the court that there were fewer than 10 foreclosures during the course of the year. One of the contentions was that counsel actually addressed the 645 F exemption argument. The court made the finding that it wasn't addressed. I think that what the court said was, yes, we were looking at 645 F. You're directing me to 645 B and E. I necessarily find that those are not applicable and you haven't presented any evidence that there were more than 10 foreclosures in the course of the year and they're not entitled to that exemption. Therefore, I'm granting summary judgment. Your argument is they're not applicable not because these entities were not otherwise mortgage bankers or whatever the other mortgage brokers, but because the capacity, the actions for which they're being sued were not those actions, but the servicing. But that's not exactly right in the sense that it sort of dovetails with your standing argument because if they could, insofar as they did sell and buy these mortgages, they were acting as bankers and brokers, right? But you say he could sue about that. He could always sue about how they interacted with him, which is as a mortgage servicer. Yeah, not as a banker. But that's the standing argument, right? Correct. It's essentially the same as the standing argument. That is correct. You're not saying they were brokers and bankers insofar as they bought and sold to each other, but that's not his business. I mean, essentially is what you're saying. That is correct. I wouldn't be so casual to say that to directly, Your Honor, but that's right. It's none of his business. It's the underlying nature of the transaction between the parties that bought and sold this note between themselves. And the state of Nevada had an interest in regulating those activities. They've directly addressed those relationships, but they've also under 645 F directly address the relationship between the mortgage servicer, in this case, Trinity Trojan at various times and Mr. And that is Mr. Mott's recourse is the utilization of 645 F, and he is pointing us to a statute for which he has no standing statutorily or otherwise. I would point out that even under a traditional standing analysis, he couldn't show damages as a result of the violation of this statute. He had the loan was made to him. He had received the benefit of the loan. He wasn't alleging that it was improperly originated. He was alleging that the subsequent events after the origination, after he received the benefit, somehow violated a statute for which he had no issues. So he had no involvement with. So the idea that he would be entitled to standing either under the statute, which specifically precludes his coverage of him or under a traditional standing analysis of particularized harm. And I'm sorry, Your Honor. I don't have the standing elements at my fingertips at the moment in this matter. I will point out that the question was asked, was this raised in the motion for summary judgment? And I can submit that it was the citation to the 645 B and E subsections 920 in both statutes was raised in on our motion for summary judgment. It's on our supplemental exhibits of record at page 16. So if if Your Honor is interested in that reference. So, well, I mean, it sort of explains because I was not understanding why the district court only said that they weren't a servicer because of the 10 transactions limitation. And you didn't even address the broker or banker. He seemed to assume they are mutually exclusive. They're not mutually exclusive. Right. You can be all three. I would say so if I'm kind of at various times. Right. I mean, it's it's not you're not necessarily all three at once all the time. Theoretically, you could be. And frankly, the the statutes aren't entirely clear. You literally it appears as though you could be a mortgage banker and a mortgage broker at the same time, subject to the same all of those provisions. However, as I point out in this particular instance, the the broker banker responsibilities were not did not involve Mr. Mott in the least. So I think that the judge made a legal finding. A finding is a matter of law that those provisions did not apply to this transaction. And Mr. Mott's interest in this transaction and that he was his remedies were limited to the provisions of 645 F. And having applied that and the exemption standard with the limit of 10 foreclosures in a month or a year, excuse me, that that there was no facts to disrupt that or to dispute that finding. Therefore, the court granted summary judgment on that issue. So does 645 F have an enforcement provision? Yes, it does. And it would entitle him to a remedy, I believe. You know, Your Honor, I have to. That that hasn't come up and I'm sorry, I don't want to misrepresent. I know that there is an administrative remedy on that. I don't know if there's a remedy available to a consumer. But so I'm not going to represent something that I'm not entirely aware of. Can I ask you about the debt collect cancellation letter or the alleged debt collect cancellation letter? If we find that this letter from First Franklin was enough to get to a jury on Mott's assertion that his debt was forgiven, what's the result of the remaining claims? Would we not have to reverse and remand on the other issues as well? Yeah, I would think so. I mean, it would it would certainly breathe new life into claims. For example, if my client was attempting to collect on a debt that was forgiven as a result of this letter, the test would be what my client knew about the loan forgiveness and its intent with regard to the enforcement. All of that would be relevant. It wasn't an issue on summary judgment because our arguments, again, were focused on the application of the law. We didn't bring up those issues. We certainly believe we'd be entitled to a defense in the event that we went back in front of a jury to show that it wasn't reasonably believed it was enforceable. So with regard to the letter, it is at least very unusual to declare a letter essentially a fraud on summary judgment. You know, when I was reading your briefs, I was looking and noticing there were some misspellings in there and dropped words and so on. I could probably have done to you. It was a pretty good brief, but I probably could have wondered about why somebody didn't proofread it a little better. Why is the fact that there was a grammatical error and some inconsistent spellings sufficient to throw the thing out on summary judgment? You know, I think in the context, I think that's really important. First of all, the letter was more than just a little off. It was, I mean, when an entity, a corporate entity that actually had legitimate operations at one point can't even spell its own name right, there was a real problem. It's not the entity, it's some person who's typing away and made a mistake. Yeah, these entities don't have people typing away on letters. They have form letters that are generated in response to these things. So the idea that it's somehow, there's a person with a word processor or whatever typing up this letter for Mr. Mott. I think the larger issue. You need something harder than that to declare it a non-entity on summary judgment. I mean, maybe your strongest argument is authentication, and maybe you can tell me exactly what you mean by that. Yeah, I can tell you, Your Honor. I think that authentication is based upon the surrounding circumstances of the letter. So the question is, how can we reasonably trust the authenticity of this letter where there are serious questions about its authenticity based on the fact that it's unsigned? It's not proper. They don't spell their name right. There's a lot of questions regarding authenticity. The only evidence that we have is this statement from Mr. Mott that he received the letter in 2009 yet doesn't disclose it until 2016. There's no discussion of it. There's no letters from anybody trying to collect between 2009 and 2016. Multiple foreclosure attempts during that period of time, Your Honor. And it wasn't raised until 2016. So the idea that in the context that this letter by itself with just Mr. Mott's testimony and nothing else to support it. The letter itself was not enough to be Mr. Mott's testimony was not enough to corroborate or authenticate. Did he give any declaration or discovery on why he got it or was he in contact with anyone? Or does his position seem to be that it just showed up in the mailbox one day? I believe that he was. I believe that I'm sorry, I'm going to defer on that, Your Honor. As far as the record goes, I'm a little spotty on his testimony. There was some reference to a news article that he saw regarding the first Franklin being sued with regard to race discrimination. And then he said he got in touch with somebody there. And yeah, and they and and they and I don't know if he's setting a threat to sue them or he asked for something. And then they said, OK, we're going to forget it. Right. Right. And then, well, my understanding was and then the letter showed up. But I say we got in touch with him. I don't remember that. No, he does not. And I doubt he remembered. So, again, in the context, I would say as far as authentication, I think the judge made a proper determination in that there really wasn't enough to corroborate and authenticate this letter. It had serious questions in and of itself. And the testimony of Mr. Mott was not enough to to certify its genuineness. I know your time is up, if I may ask about the FDCPA issues, because even if your clients were licensed or not licensed, it doesn't really affect the FDCPA issue. And so can you respond briefly to your friend's argument, Mr. Clark, regarding those two letters, the two follow up letters, why they didn't matter? Well, the question on as a matter of law, the question is materiality. Obviously, if we're going to argue over whether or not the interest rate was properly recited or not, we're getting into factual questions which are not going to get me over the hump on a summary judgment. But the question is to do with the materiality. And again, in the proper context during, you know, we had one letter that has a point zero seven five percent interest, seven seven one hundredths of a percent overstated, subsequently corrected. There is no allegation that he was overcharged on the account, just that the interest rate recital was improperly recited. So the the allegation that it was it is doesn't rise to the material misrepresentation that is required in a FDCPA claim under the Donahue case. And because of because of the amount or because of the follow up letters, because of both, because of both. So when you take that relationship in context, in total context, what you see is a very small immaterial alteration. The amount they were actually asking for was the correct amount. Isn't that right? It was just that the statement of what the interest rate was was off by five one thousandths of a percent. That is correct. But the calculated amount was correct. Correct. There is. I will point out that he says they had one more payment than actually was due. It was. So, again, it was sixteen dollars. The amount would a differential would have been sixteen dollars. And, you know, when it comes to things like late charges, for example, materiality is going to be based on there's a there's a marginal component. When I say that, what I mean is if if there were no late charges and the record shows that there was one or two that were charged, that's pretty material. It changes the nature of that that account. It changes some of the numbers. But the marginal difference between a eighty seven and eighty eight late charges is totally insignificant and immaterial to the nature of that relationship. The nature of the relationship and the representation is you're seriously delinquent and there's monies that must be paid on this account. So the fact that there's a sixteen dollar differential is not enough to invoke rights under the FDCPA. What would the remedy be if it were. If it were. Pardon me. If it were a problem, what would the remedy be? Well, I I mean, obviously, the FDCPA would provide remedies for. And what is it? Is it a per occurrence? It's I believe it's up to a thousand dollars per occurrence and attorney's fees. The occurrence is one occurrence here. Correct. It would be one late charge. Yeah. And in one letter, because, again, the subsequent letters remediate. That's what I mean. I mean, there was one occurrence of a of a misstatement. Right. Which, again, and of course, actual damages would be available in this case if it was shown that there was a demand, there would be sixteen dollars. So I should pay this thousand dollars. Pardon me. So why don't you pay this thousand dollars? Because that's what I want you to find out. It's not one of these things that's multiplying, multiplying and multiplying. Your honor, that would. Were there settlement discussions leading up to this? Yes, your honor. I'll leave it at that. Yeah. All right. Well, your time. Thank you very much. Thank you, Mr. Clark. Mr. Clark. Have we lost Mr. Clark? Am I on? Am I here? Hello. Yes, I can hear you. OK, thank you. Sorry. I had a technical momentary technical difficulty. Thank you for your indulgence. Just very briefly, your honor, is on the servicing issue and whether that was the exclusive relationship between Mr. Mott and Trojan Trinity. It's actually not true because Trojan and Trinity sought to bring a quiet title action against Mr. Mott. And that has to do with whether or not they they either own the interest in question or not, regardless of whether they are servicers. So. So the question about, you know, were were the dealings between the two separable from the claims that the defendants brought in a counterclaim or Trojan brought in a counterclaim. And I would submit that their ownership they brought. So I'm confused if they thought to bring a quiet title action in this case. Yes. Yes. As a counterclaim. And that was maybe it could be a defense for the quiet title action. Absolutely. Because if they don't have lawful ownership and they had no right to, you know, that's the question. But the question is whether they have lawful ownership or whether the consequence of them not being licensed doesn't affect their ownership on the sort of analogy that Mr. Judge Boggs was giving you, i.e. it may affect the relationship between the parties to the contract. But does it affect their ownership interest vis-a-vis third parties? Well, I think that if they're going to assert a claim against Mr. It does. And furthermore, your honor, I will note that just a minute. Why? Because they're seeking to foreclose on Mr. Mott's property and they're trying to foreclose on Mr. Mott's property. And the question is, do they have ownership of that mortgage? And that's a separate question from whether the party to the transaction could avoid it. Well, I think that by the party, but the party didn't void it. I would submit, your honor, that those questions are related insofar as they're seeking to enforce ultimately rights against Mr. Mott based on their authority to. But the contract was voidable, but it wasn't voided. Well, there is a separate there is a separate issue here, your honor, which is whether or not why Sellis was never disclosed and why the court found that our evidentiary proffer was insufficient, even though it denied our motion to strike by by noting that that Stella's was not sued. No discovery could have been taken. Affirmative representation. What does Stella's have to do with this? I'm totally I was confused when I was reading the brief and I'm confused again. What's what's relevant? Because to prove their entitlement to quiet title, your honor, they need to prove that their claim is superior to all others. What they represented in their verified counterclaim was that a different entity, DBI, sold the note to to Trinity in in in fact, and they disclosed only in their pretrial exhibits. In this case, a contract indicating that that another entity they had not sued had not identified in discovery or their disclosures had actually been the one who who sold them the interesting question. And as we noted in our in our opening brief, there was a there was an open issue about whether or not they that entity had a whether or not that entity had or would have had any objections to to this quiet title action based on the relationship between the interested parties in question. But we never got the opportunity to take discovery in this case on that question because that that that that factual misrepresentation was made. And and that entity was never identified. And so we would submit that that they have not proven, even though this this entity plainly exists, that they have not proven their entitlement to enforce this interest against all others because they may. OK, thank you very much. Your time is up. I appreciate the arguments. The case of Mott versus Trinity Financial Services is submitted and we'll go to the last case of the day. And really, I'll try communications.
judges: Boggs, Berzon, Murguia